```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
UNITED STATES OF AMERICA,
                                    MEMORANDUM AND ORDER
          -against-                    89-CR-229 (DRH)

VINCENT LOPEZ,

          Defendant.
----------------------------X
```
A P P E A R A N C E S:

For the Government:
    Bridget M. Rohde
    Acting United States Attorney
    Eastern District of New York
    100 Federal Plaza
    Central Islip, New York 11722
      By: Raymond A. Tierney, A.U.S.A.

For Defendant:
    Federal Defenders of New York, Inc.
    770 Federal Plaza
    Central Islip, New York 11722
      By: Randi L. Chavis, Esq.

HURLEY, Senior District Judge

      The purpose of this decision is to determine whether the "quantity of heroin for which [Vincent] Lopez ["Lopez" or "defendant"] should be held responsible was less than 30 kilograms."[1] If so, he would be eligible for a possible reduction of the 405 month period of incarceration he is presently serving pursuant to the sentence imposed by the Hon.

---

[1] United States v. Melendez, 679 Fed. App'x 68 (2d Cir. 2017)(vacating this Court's March 24, 2016 Order denying Lopez's application for a sentencing reduction made pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, and remanding for further proceedings consistent with the Circuit's Order.)

Thomas C. Platt on October 25, 1991.[2]  However, as explained
<u>infra</u>, Lopez's applicable guideline range has not changed and
thus he is ineligible for the relief sought.

                         BURDEN OF PROOF

        The first question that arises concerns which party has
the burden of proof.  Does Lopez, as the movant, bear the burden
of establishing his eligibility for relief under § 3582(c)(2) or,
since that determination implicates the weight of the heroin
attributable to him for sentencing purposes, does the onus rest
with the government?  Although the issue has not been addressed
by the parties and my research has failed to produce a definitive
answer, it seems the latter represents the law at least in the
Second Circuit.  <u>Cf.</u> <u>United States v. Rios</u>, 765 F.3d 133, 139 (2d
Cir. 2014)("The government's factual burden at sentencing
[regarding a drug quantity determination in § 3582(c)(2) context]
is a showing by a preponderance of the evidence . .
. .").[3]  Accordingly, the defense need not prove for present
purposes that the heroin attributable to Lopez is less than 30

---

[2] Probation advises that Lopez's "current release date is February 7, 2019."  (Addendum to the Presentence Report (Doc. # 701 filed June 4, 2015) at p. 2.)

[3] <u>But see</u> Haines, Bowman and Wall, <u>Federal Sentencing Guidelines Handbook</u> 236 (2016-17 ed.)("The defendant has the burden to show that a retroactive amendment applies, but once he shows that the amendment affected his sentence, the burden of proof shifts to the government.")

kilograms. Rather it is the government's obligation to establish that the subject drug quantities equal or exceed that amount.

## POSITION OF EACH PARTY

The government maintains that "the defendant is responsible for an amount far in excess [of] 10 [sic, should read 30] kilograms" (Gov't's Apr. 21, 2017 Mem. at 3) and therefore is "ineligible for a sentence reduction." (Id. at 8.) In support of its position, specific references are made to the trial transcript detailing the breadth of the overall conspiracy of which defendant stands convicted, supplemented by a recitation of his particular conduct in the primary area of his drug dealing activities – that being East New York, – from November 1987 to his arrest in August of 1989. (Id. at 9-14.) Based on Lopez's involvement in just the East New York branch of the operation, independent of his activities in the overall conspiracy, the government opines that Lopez is accountable for "hundreds of kilograms of heroin." (Id. at 14.)

Defendant's counter argument is brief and reads as follows:

> With respect to Mr. Lopez's eligibility, I reiterate my position that Judge Platt, after presiding over Mr. Lopez's trial, determined that his conduct made him responsible for between 10 and 30 kilograms of heroin. The trial took place before Apprendi v. New Jersey, 530 U.S. 466[] (2000). Therefore, there was no determination made by the jury as to the weight of the drugs involved in the conspiracy or attributable to Mr. Lopez. Nor

> did Judge Platt, at the time of sentencing, make any numeric finding as to the heroin. As a reading of the sentencing transcript makes clear, Judge Platt did not refer to drug quantity or endorse the Pre-Sentence Report's assertion of 44 kilograms of heroin. His only statement in reference to the guideline calculation was that it was "accurately computed." <u>Transcript of sentencing</u>, Oct. 25, 1991, P.21 lines 19-20. That computation used a weight of 10 to 30 kilograms to determine Mr. Lopez's offense level.

(Def.'s Mar. 24, 2017 Letter Br. at 2.)

In essence, Lopez contends that Judge Platt implicitly found that the amount of the subject heroin was under 30 kilograms thereby foreclosing the government's claim that it exceeded that amount. The Court notes that the Second Circuit's decision in <u>Rios</u> instructs that "district courts in § 3582(c)(2) proceedings cannot make findings inconsistent with that of the original sentencing court." <u>United States v. Rios</u>, 765 F.3d at 138 (internal quotation marks and citation deleted).

<u>Rios</u>, however, is of no aid to Lopez. Contrary to his assertion, Judge Platt never found by inference or otherwise that he was "responsible for between 10 and 30 kilograms of heroin." (Def.'s Mar. 24, 2017 Letter Br. at 2.) Instead, the only conclusion permissible from the guideline range utilized is that Judge Platt found "10KG Heroin . . . or more." <u>1987 Guidelines Manual</u> § 2D1.1, Drug Quantity Table, at p. 2.38; <u>see also</u> <u>United States v. Melendez</u>, 679 Fed. App'x at 71 ("It is undisputed that

-4-

the Guidelines calculation for Lopez in 1991 would have resulted in the 324 to 409 months range for any quantity of heroin above the threshold 10 kilograms."); Sept. 11, 1991 PSR at ¶ 39.

Significantly absent from Lopez's submission is <u>any</u> reference to the trial testimony concerning the pivotal question as to "whether the quantity of heroin for which Lopez should be held responsible for is less than 30 kilograms . . . ." <u>United States v. Melendez</u>, 679 Fed. App'x at 71.

ANALYSIS OF EVIDENCE RE QUANTITY OF
HEROIN ATTRIBUTABLE TO LOPEZ FOR
SENTENCING PURPOSES

Defendant was found guilty of Count One which charged him and others of conspiring to distribute and possessing with the intent to distribute heroin and cocaine. Probation concluded that the offense involved in excess of 300 kilograms of heroin. Sept. 11, 1991 PSR at ¶ 39.[4]

The overall conspiracy was mammoth in scope. As described by the Second Circuit in <u>United States v. Concepcion</u>:

> The Organization consisted of a highly
> structured distribution network that
> purchased relatively pure narcotics, cut and
> packaged them, and then sold them through 24-
> hour street sales locations known as "spots."
> At its peak, the Organization received gross
> income from heroin sales of more that $10
> million a month.

---

[4] Lopez was also found guilty of Count 10 which charged him with violence in aid of racketeering. That conviction is not relevant to the eligibility issue under discussion.

983 F.2d 369, 375 (2d Cir. 1992).[5]

But even though Lopez was found by a jury to be a member of what the Second Circuit labeled in Conception as the "Organization,"[6] not all of the acts of his co-conspirators are necessarily germane in determining his now advisory guideline range. See Nov. 1, 2015 Guidelines Manual A.N. 1 to § 1B1.3, entitled "Sentencing Accountability and Criminal Liability," at p. 23. Only if the conduct of his co-conspirators fell within the "scope of the jointly undertaken criminal activity, . . . [were undertaken] in furtherance of that criminal activity, and [were] reasonably foreseeable in connection with that criminal activity" may Lopez be saddled with responsibility for their acts. Nov. 1, 2015 Guidelines Manual, § 1B1.3(a)(1)(B).

The transcript in this case is many thousands of pages in length. Although the point has not been broached by the defense, somewhere in that record there may be information suggesting that Lopez was unaware, and could not reasonably be expected to forsee what some of his co-conspirators were doing

---

[5] Concepcion — i.e. the titled defendant in the cited case — and Lopez were members of the same conspiracy as were 36 other charged individuals. As a result of a severance, some conspirators were tried with Lopez before Judge Platt, and others including Concepcion, before the Hon. Arthur D. Spatt. United States v. Rosa, 11 F.3d 315, 325 (2d Cir. 1993).

[6] That term, viz. "Organization," will sometimes be used hereinafter with respect to the overall operation charged in Count One.

elsewhere as part of the operation.[7] It will be assumed that such is the case. Accordingly, attention will be focused solely on Lopez's activities in the Organization's operations in East New York in which he played a major and continuing role.

By way of background, there were several drug distribution sites or "spots" in East New York. (Apr. 3, 1991 Tr. at 177.) Ricardo Melendez ("Melendez"), a leader of the Organization,[8] testified for the government (after his conviction in a separate trial but before sentence) that the "East New York spots" alone collectively were generating "at least" $500,000 in revenue from "heroin" sales per week. (May 9, 1991 Tr. at 3189.)

Lopez first became affiliated with the Organization around November of 1987 as a "clocker." As explained by Melendez, his function in that role was to "go around the spot[s to which he was assigned] and make sure . . . everything is running, every lookout is looking out, [and] the holeman is doing his job [as the spot salesperson]." (May 9, 1991 Tr. at p. 3206.) Thereafter, he became a runner. (Id. at 3206-08.) The duties of a runner, as also explained by Melendez, were to "leave from the base with drugs or without drugs, pick up money, go by

---

[7] The Organization operated "primarily in the Williamsburg and East New York sections of Brooklyn." United States v. Concepcion, 983 F.2d at 375; see also May 8, 1991 Transcript ("Tr.") at 3053.

[8] United States v. Concepcion, 983 F.2d at 375.

each spot, pick up money, if there wasn't enough material, drop off material, drugs[,] and come back to the base." (Id. at 3206.)

Lopez was a runner initially for two, and then three spots. (Apr. 16, 1991 Tr. at 1631.) There were "[a]nywhere from three to six spots" in East New York during the relevant time frame. (May 9, 1991 Tr. at 3188.) Each spot was operated 24 hours a day seven days a week. (Apr. 16, 1991 Tr. at 1630-31.)

In April of 1988, two kilograms of heroin according to Melendez "was . . . worth . . . about 320,000 dollars."[9] (May 9, 1991 Tr. at 3179.) Based on that evidence, 30 kilograms of heroin at $160,000 per kilogram translated into total sales of $4,800.000. So the question becomes whether Lopez is responsible for sales in that amount.

A juxtapositioning of Lopez's deep-seated involvement in the East New York part of the Organization with the foreseeability and other accountability requirements of U.S.S.G. § 1B1.3 indicates that he maybe legitimately be held to answer,

---

[9] Whether the term "worth" pertains to what the Organization's supplier or suppliers charged or the retail market value of the drugs is unknown. To the extent its reference point is the latter, as has been assumed, the corresponding subsequently provided weight calculations in the text are more favorable to the defense. Of course, that is so because the higher the price per kilograms, the less kilograms attributable to a given dollar amount.

Melendez testified that mark-up between wholesale and retail is "[a]bout double." (May 9, 1991 Tr. at 3185.)

consistent with the fair preponderance standard, for the full weight corresponding to the entire $500,000 in weekly heroin sales. Under that scenario, Lopez reached the $4,800,000 mark in slightly less than ten weeks. But even if Lopez was acting as a clocker and then a runner for only two spots of the three to six in operation at any given time, he would have been responsible for $4,800,000 in heroin sales within the first seven months of his approximately twenty month involvement with the Organization. That conclusion is predicated on the following calculations: (1) $500,000 in sales per week times 2/6 translates to $166,667 for the minimum of two East New York spots worked by Lopez, and (2) the $166,667 per week attributable to two spots multiplied by 28.8 weeks totals just over $4,800,000.

Simply put, there is no reasonable view of the evidence — even under the ultra-conservative estimate last outlined above — that Lopez's responsibility for sentencing purposes falls below 30 kilograms. Indeed, a review of the trial transcript virtually compels the conclusion that the amount attributable to him dwarfs that number and, as noted earlier, defendant does not contend otherwise via reference to testimony elicited at trial.

Lopez's current advisory guideline range includes a base offense level of a 36 under U.S.S.G. § 2D1.1 (based on a drug quantity of "[a]t least 30 KG but less than 90 KG of heroin"), which is the same base offense level as existed in 1991

under § 2D1.1 as then configured (based on "10 KG [or more of] Heroin," 1987 U.S.S.G. Manual, § 2D1.1 at p. 148).  Which is to say, his guideline range in 1991 would not have been lower had the current amended guidelines been in place when he was sentenced by Judge Platt thereby mandating denial of his § 3582(c)(2) application.  Cf. United States v. Vega, 2016 WL 4179947, at *3-4 (E.D.N.Y. Aug. 5, 2016)(Vega, like Lopez, was convicted of the conspiracy charged in Count One and found responsible at sentencing for "hundreds of kilograms of heroin").

## Conclusion

For the reasons indicated, defendant's § 3582(c)(2) application is denied.

SO ORDERED.

Dated: August 11, 2017
       Central Islip, New York

_____
DENIS R. HURLEY, U.S.D.J.